JUDGE RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARISA D'ADAMO,

          Plaintiff,

-against-

SPORTSCARE INSTITUTE, INC.,
BARI VITOLO and RON LAMBARDI,

          Defendants.
------------------------------------------------------------X

**05 CV 9460**

Case No.

**COMPLAINT**

(Jury Trial Demanded)

RECEIVED
NOV 08 2005
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Marisa D'Adamo (hereinafter "plaintiff" and/or "D'Adamo"), by her attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of the defendants Sportscare Institute (hereinafter "defendant" and/or "SI"), Bari Vitolo (hereinafter "defendant" and/or "Vitolo"), and Ron Lambardi (hereinafter "defendant" and/or "Lambardi") alleges:

1. This is an action brought to remedy sexual harassment and hostile work environment, based on gender, leading to the constructive discharge of plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq.* ("Title VII"), the New York State Human Rights Law §290, *et seq.* ("NYSHRL" and/or "Executive Law") and the Administrative Code of the City of New York, New York City Human Rights Law ("NYCHRL"), Section 8-101, *et seq.*

### JURISDICTIONAL BACKGROUND

2. Plaintiff is a thirty (30) year old female.

3. Plaintiff is a "person" within the meaning of 42 U.S.C. §2000e-(a); Executive Law §292(1); and Administrative Code §8-102(1).

4. Plaintiff resides at 813 Knollwood Court, Naples, Florida 34108

5. Defendant SI an "employer" within the meaning of 42 U.S.C. §2000e-(b), Executive Law §292(5) and NYCHRL Section 8-102(5).

6. At all relevant times hereinafter mentioned, SI maintained a place of business at 24 West 57th Street, Suite 509, New York, New York 10019.

7. At all relevant times hereinafter mentioned, defendant Bari Vitolo was Vice President of SI, and plaintiff's supervisor.

8. At all relevant times hereinafter mentioned, Ron Lambardi, was the President of SI.

9. This Court has jurisdiction over claims arising under 42 U.S.C. §2000e, *et seq*.

10. Plaintiff requests this Court to exercise its supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all of plaintiff's New York State and New York City law claims.

## PROCEDURAL BACKGROUND

11. The Equal Employment Opportunity Commission (hereinafter "EEOC") received a timely charged filed by plaintiff (Charge No. 160-2005-02306) in which plaintiff alleged, *inter alia*, that defendant SI engaged in discriminatory conduct against her, on the basis of gender, after failing to remedy sexually harassing conduct and hostile work environment, which led to the constructive discharge from her employment from SI, in violation of Title VII.

12. On August 10, 2005, the EEOC terminated its processing of this charge and issued plaintiff a Notice of Right to Sue Letter, a copy of which is annexed hereto as Exhibit A.

# FACTS

13. On or about June 2, 2003, plaintiff began her employment with defendant SI as Clinical Director of defendant's New York City office.

14. Defendant SI is a company that provides physical therapy to patients.

15. Plaintiff is a licensed physical therapist, who received her undergraduate degree in exercise science, a master's degree in physical therapy, and her Board certification in Sports Physical Therapy.

16. As a physical therapist, plaintiff specialized in overuse injury and the unique pathologies affecting runners from the novice to elite marathoners.

17. During plaintiff's employment at SI, defendant rented office space to Lewis G. Maharam, M.D., an orthopedist specializing in sports medicine. Dr. Maharam is also the medical director of the New York City marathon and lectures on topics relating to sports medicine.

18. Dr. Maharam regularly refers patients to SI for physical therapy. As a result, upon information and belief, SI is financially dependent on Dr. Maharam.

19. At the onset of her employment, Dr. Maharam began to show a sexual interest towards plaintiff, despite plaintiff's interest to maintain a strict professional relationship with him.

20. This manifestation of sexual interest by Dr. Maharam toward plaintiff became evident to plaintiff after Dr. Maharam bought plaintiff gifts on a regular basis, including but not limited to handbags, various gifts from vacations and Christmas presents. Dr. Maharam would leave these gifts on plaintiff's desk at work, for the entire office to see.

21. At the same time, Dr. Maharam began to engage in sexually harassing conduct towards plaintiff by excessively telephoning plaintiff, at all hours of the day, including early in the morning, during plaintiff's vacation time, and on the weekends.

22. Simultaneously, in furtherance of this sexually harassing conduct, Dr. Maharam attempted to contact plaintiff by e-mails, using instant messenger, at all hours of the day.

23. In attempt to keep her physically closer to him at all times, Dr. Maharam notified plaintiff that she must attend the work-related events he was attending, including lectures he was giving and private patient care. In fact, Dr. Maharam threatened plaintiff that he would have SI terminate her employment if she failed to attend these events, leaving plaintiff in fear of losing her job if she did not comply with his unreasonable and inappropriate requests.

24. The sexually harassing conduct continued thereafter when Dr. Maharam told other therapists and patients, in the presence of plaintiff, that plaintiff has "the best hands." This conduct was made by Dr. Maharam to plaintiff with a sexual overture and with a desire to portray a sexual relationship with plaintiff to others.

25. Dr. Maharam's sexually harassing conduct was further evident as he continually referred to plaintiff as his 'girl" and his personal "therapist."

26. The sexually harassing conduct directed towards plaintiff increased during the course of plaintiff's employment at SI. For example, Dr. Maharam engaged in numerous inappropriate conversations with plaintiff, telling her, among other things, that he was "sexually frustrated," "feeling frisky," and that he had Viagra in his office.

4

27. In addition, Dr. Maharam left a bottle of Viagra on plaintiff's desk for the entire SI staff to see.

28. Dr. Maharam made every attempt possible to be physically close to the plaintiff by constantly trying to touch and hug her, and have plaintiff near him at all times.

29. After months of enduring this sexually harassing conduct, in or around October 2003, plaintiff complained to defendant Vitolo about Dr. Maharam's sexually harassing conduct.

30. Not only did defendant Vitolo ignore plaintiff's complaints, but told her to ignore Dr. Maharam's conduct as well.

31. After plaintiff complained to defendant Vitolo about Dr. Maharam's sexually harassing conduct, Dr. Maharam's began to create a hostile work environment for plaintiff by engaging in further harassing conduct against plaintiff.

32. For example, Dr. Maharam intensified his threats to plaintiff that he was going to have SI terminate her employment.

33. In fact, Dr. Maharam began to engage in further harassing conduct by lying about plaintiff's personal and professional life to SI management, plaintiff's patients and other physical therapists in the community, in an attempt to discredit plaintiff's reputation in the industry.

34. For example, Dr. Maharam lied to defendants Vitolo and Lambardi about the quality of patient care that plaintiff was providing, stating that plaintiff was not providing proper patient care, in an attempt to have SI terminate plaintiff's employment. Dr. Maharam also lied to professionals in the industry and plaintiff's patients,

inaccurately stating that plaintiff was not qualified to perform the position that she was performing and thereafter forbidding his own patients from using plaintiff as their physical therapist, in an effort to destroy her reputation in the industry. In addition, Dr. Maharam made false statements about plaintiff's personal sexual relationships to defendants Vitolo and Lambardi.

35. Although defendants Vitolo and Lambardi were aware of Dr. Maharam's lies, they permitted him to continue engaging in such harassing conduct.

36. After Dr. Maharam's harassing conduct increased, in or around March 2004, defendant Vitolo admitted to plaintiff that Dr. Maharam "like[d] [her] too much" and has "psychological problems," but refused to remedy this hostile work environment.

37. Defendant Vitolo even asked plaintiff "I don't know how you put up with this [harassing conduct] for so long, wouldn't it be better for you if you weren't in that office everyday?"

38. Defendant Vitolo told plaintiff and Karen Lovelock, plaintiff's secretary, that he was "waiting for [plaintiff] to crack," presumably so that plaintiff would voluntarily leave SI, and, as he stated, so that his "problems would be over."

39. Despite plaintiff's numerous complaints to defendant Vitolo about Dr. Maharam's sexually harassing conduct and hostile work environment he created, defendant Vitolo urged plaintiff not to notify anyone else in the company about her complaints.

40. Starting in or around April 2004, plaintiff complained to defendant Vitolo on a daily basis about Dr. Maharam's sexually harassing conduct and the hostile work environment he was creating.

41. Despite plaintiff's complaints, defendants required plaintiff to work directly with Dr. Maharam on a bi-monthly basis while doing rounds with him.

42. Defendant Vitolo thereafter failed to take any remedial steps to remedy this hostile work environment.

43. In or around April, 2004, plaintiff complained to George Samalag, Regional Director of SI, about Dr. Maharan's sexually harassing conduct and the hostile work environment she was experiencing at SI. Although Samalag notified plaintiff that he was going to come to the New York office to supervise that office for one (1) day, Samalag failed to come to SI's New York office at any time.

44. In the summer of 2004, defendant Vitolo and Samalag held a meeting with plaintiff, Jodie Bourne, athletic trainer, Amy Younger, physical therapist and Lovelock, at plaintiff's request.

45. During this meeting, plaintiff, Ms. Bourne, Ms. Younger, and Ms. Lovelock complained about Dr. Maharam's harassing behavior.

46. In response, defendant Vitolo and Samalag told the women that there was nothing that SI can do about Dr. Maharam's sexually harassing and harassing behavior because Dr. Maharam "gives us half of our business." In addition, defendant Vitolo and Samalag told the women at this meeting to "be sweet to him [Dr. Maharam] and give him the respect that his degree deserves."

47. Throughout her employment with SI, plaintiff's work performance was excellent, and was praised by SI and her patients.

48. In retaliation for complaining about the sexual harassment and hostile work environment, on or about July 22, 2004, defendant gave plaintiff a negative performance evaluation

49. Defendant's retaliatory conduct is evident from the face of plaintiff's July 22, 2004 performance evaluation. For example, the performance evaluation stated the following:

- Your 1st 6 months were consistently meeting all expectations. **Since your problems have arisen all of these factors have become inconsistent.** [emphasis supplied].

- The inability to correct the problems that have occurred is very frustrating.

- Go back to loving what you do. **Solve problems. Don't make them worse.** [emphasis supplied].

50. Dr. Maharam's harassing conduct continued thereafter, causing plaintiff to complain to Kathleen Miller, Human Resources representative and Lambardi during a meeting in or around November 2004.

51. However, shortly after the meeting with plaintiff, Miller and Lambardi told plaintiff SI "did all they could [to remedy Dr. Maharam's harassing conduct]," further stating that they "fixed" the situation.

52. Defendants permitted plaintiff to endure a sexually harassing and hostile work environment, without taking the necessary steps to alleviate plaintiff's complaints.

53. In or around December 2004, the working conditions at SI became so unbearable, that plaintiff was left with no choice but to resign.

54. Defendants have engaged in a pattern of failing to remedy the hostile work environment and sexually harassing conduct created by Dr. Maharam.

55. For example, upon information and belief, Jenn Blumenthal, former secretary of Dr. Maharam who was on SI's payroll, was constructively discharged after defendant SI failed to address her concerns about the sexually harassing conduct and hostile work environment created by Dr. Maharam.

56. Ms. Blumenthal notified plaintiff that Dr. Maharam grabbed Blumenthal's buttocks, constantly touched her and attempted to hug her on numerous occasions.

57. Ms. Blumenthal also complained to defendants about Dr. Maharam's sexually harassing conduct, to no avail. As a result, Ms. Blumenthal was left with no choice but to resign from her employment with defendant SI.

58. In addition, upon information and belief, Jodie Bourne, former physical therapist at SI, was also constructively discharged in or around December 2004, after defendant SI failed to address her concerns about the hostile work environment created by Dr. Maharam.

59. On numerous occasions, in response to complaints about the sexually harassing conduct and hostile work environment caused by Dr. Maharam, defendants explained to plaintiff and other staff members at SI, including Blumenthal and Bourne, that Dr. Maharam's business was too important for SI to lose. As a result, defendants failed to take any measures to alleviate the sexually harassing conduct and hostile work environment permeating throughout SI's New York office.

### FIRST CLAIM
### (Sexual Harassment
### In Violation of Title VII [Federal Claim];
### Against Defendant SI)

60. Plaintiff realleges all prior allegations.

61. Defendant SI violated Title VII, 42 U.S.C. §2000e, *et seq.*, by permitting Dr. Maharm to engage in sexually harassing behavior against the plaintiff, with complete knowledge of such unlawful behavior, and failing to alleviate this unlawful conduct.

62. As a result of defendant SI's failure to alleviate the sexually harassing conduct, plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

### SECOND CLAIM
### (Sexual Harassment
### In Violation of NYSHR [State Claim];
### Against All Defendants)

63. Plaintiff realleges all prior allegations.

64. Defendants violated Executive Law §296(1), by permitting Dr. Maharm to engage in sexually harassing behavior against the plaintiff, with complete knowledge of such unlawful behavior, and failing to alleviate this unlawful conduct.

65. As a result of defendants' failure to alleviate the sexually harassing conduct, plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

### THIRD CLAIM
### (Sexual Harassment
### In Violation of NYCHRL [City Claim]
### Against Defendant SI)

66. Plaintiff realleges all prior allegations.

67. Defendant SI violated New York City Administrative Code §8-107(1)(a), by permitting Dr. Maharm to engage in sexually harassing behavior against the plaintiff,

with complete knowledge of such unlawful behavior, and failing to alleviate this unlawful conduct.

68. As a result of defendant SI's failure to alleviate the sexually harassing conduct, plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

## FOURTH CLAIM
### (Hostile Work Environment In Violation of Title VII [Federal Claim] Against Defendant SI)

69. Plaintiff realleges all prior allegations.

70. Defendant SI violated Title VII, 42 U.S.C. §2000e, *et seq.*, by creating a hostile work environment by permitting Dr Maharm to engage in harassing behavior against the plaintiff, with complete knowledge of such unlawful behavior.

71. As a result of defendant SI's failure to alleviate the sexually harassing conduct, plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

## FIFTH CLAIM
### (Hostile Work Environment In Violation of NYSHRL [State Claim] Against All Defendants)

72. Plaintiff realleges all prior allegations.

73. Defendants violated Executive Law §296(1), by creating a hostile work environment by permitting Dr Maharm to engage in harassing behavior against the plaintiff, with complete knowledge of such unlawful behavior.

11

74. As a result of defendants' failure to alleviate the sexually harassing conduct, plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

### SIXTH CLAIM
### (Hostile Work Environment
### In Violation of NYCHRL [City Claim]
### Against Defendant SI)

75. Plaintiff realleges all prior allegations.

76. Defendant SI violated New York City Administrative Code §8-107(1)(a), by creating a hostile work environment by permitting Dr. Maharm to engage in harassing behavior against the plaintiff, with complete knowledge of such unlawful behavior.

77. As a result of defendant SI's failure to alleviate the sexually harassing conduct, plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

### SEVENTH CLAIM
### (Constructive Discharge Based on Gender
### In Violation of Title VII [Federal Claim]
### (Against Defendant SI)

78. Plaintiff realleges all prior allegations.

79. Defendant SI constructively discharged plaintiff, based on gender, when they created intolerable working conditions forcing plaintiff to resign by failing to alleviate the sexual harassment and hostile work environment created by Dr. Maharam, despite their knowledge about such unlawful behavior, in violation of Title VII, 42 U.S.C. §2000e, *et seq*.

12

80.     As a result of defendant SI's unlawful practices, plaintiff has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

### EIGHTH CLAIM
### (Constructive Discharge Based on Gender
### In Violation of NYSHRL [New York State Claim]
### (Against All Defendants)

81.     Plaintiff realleges all prior allegations.

82.     Defendants constructively discharged plaintiff, based on gender, when they created intolerable working conditions forcing plaintiff to resign by failing to alleviate the sexual harassment and hostile work environment created by Dr. Maharam, despite their knowledge about such unlawful behavior, in violation of the New York State Human Rights Law § 296, *et seq*.

83.     As a result of defendants' unlawful practices, plaintiff has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

### NINTH CLAIM
### (Constructive Discharge Based on Gender
### In Violation of NYCHRL [New York City Claim]
### (Against Defendant SI)

84.     Plaintiff realleges all prior allegations.

85.     Defendant SI constructively discharged plaintiff, based on gender, when they created intolerable working conditions forcing plaintiff to resign by failing to alleviate the sexual harassment and hostile work environment created by Dr. Maharam, despite their knowledge about such unlawful behavior, in violation of the New York City Administrative Code, § 8-107, *et seq*.

86. As a result of defendant SI's unlawful practices, plaintiff has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

**WHEREFORE**, plaintiff prays that judgment be entered against defendants awarding lost back wages and front wages; accrued pension benefits; and all such other and different relief that this court may deem just;

(a) On the First Claim, judgment against defendant SI, in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(b) On the Second Claim, judgment against defendants in the amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial.

(c) On the Third Claim, judgment against defendant SI in the amount of at least One Million Dollars ($1,000,000.00), in compensatory damages; and in an amount of at least Two Million Dollars ($2,000,000.00) in punitive damages, in an exact amount to be determined at trial.

(d) On the Fourth Claim, judgment against defendant SI, in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(e) On the Fifth Claim, judgment against defendants, in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(f) On the Sixth Claim, judgment against defendant SI in the amount of at least One Million Dollars ($1,000,000.00), in compensatory damages; and in an amount of at least Two Million Dollars ($2,000,000.00) in punitive damages, in an exact amount to be determined at trial.

(g) On the Seventh Claim, judgment against defendant SI, in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(h) On the Eighth Claim, judgment against defendants, in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(i) On the Ninth Claim, judgment against defendant SI in the amount of at least One Million Dollars ($1,000,000.00), in compensatory damages; and in an amount of at least Two Million Dollars ($2,000,000.00) in punitive damages, in an exact amount to be determined at trial.

Dated: New York, New York
November 8, 2005

BALLON, STOLL, BADER & NADLER, P.C.

By: _____
MARSHALL B. BELLOVIN (MB 5508)
*Attorneys for Plaintiff*
1450 Broadway, 14th Floor
New York, New York 10018
(212) 575-7900

O:\BELLOVIN\D'ADAMO\16646.001\Complaint.Doc

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | From: |
|---|---|
| Marisa D'Adamo<br>813 Knollwood Ct.<br>Naples, Florida 34108 | Equal Employment Opportunity Commission<br>New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, New York 10004-2112 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 60-2005-02306 | Legal Unit  E-2 | (212) 336-3721 |

*(See also the additional information attached to this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ ]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____    August 10, 2005
Spencer H. Lewis, Jr., District Director         *(Date Mailed)*

Enclosure(s)

cc:  Respondent(s): SportsCare Institute
     c/o Perez, Furey & Varvaro
     Attorneys At Law
     P.O. Box 9372
     Uniondale, New York 11553
     Attn: Thomas McNally

C/P Attny: Ballon, Stoll, Bader & Nadler, P.C.
Counsellors At Law
1450 Broadway
New York, New York 10018
Attn: Marshall Bellovin